**UNITED STATES TRUST CO. OF NEW YORK v. ZELLE et al.**

**WARNER et al. v. ZELLE et al.**

**GASTON GROUP OF HOLDERS OF WISCONSIN CENT. RY. CO. FIRST GENERAL MORTGAGE BONDS v. ZELLE et al.**

Nos. 14308, 14309.

United States Court of Appeals
Eighth Circuit.

Oct. 18, 1951.

M'Cready Sykes, New York City (Samuels H. Morgan, St. Paul, Minn., on the

brief; Morgan, Headley, Raudenbush & Morgan, St. Paul, Minn., and Stewart & Shearer, New York City, of counsel), for appellant United States Trust Co. of New York, as Trustee of Wisconsin Cent. Ry. Co. First General Mortgage.

Reese D. Alsop, New York City (Hunt, Hill & Betts, New York City, of counsel), for appellant The Gaston Group of Holders of Wisconsin Cent. Ry. Co. First General Mortgage Bonds.

C. W. Wickersham, Jr., New York City (C. W. Wickersham and William D. Ford, New York City, on the brief; Cadwalader, Wickersham & Taft, New York City, of counsel), for appellants Joseph R. Warner et al.

James E. Dorsey, Minneapolis, Minn. (Donald West, Minneapolis, Minn., on the brief; Dorsey, Colman, Barker, Scott & Barber, Minneapolis, Minn., of counsel), for appellee Edgar F. Zelle as Trustee of Wisconsin Cent. Ry. Co.

Henry S. Mitchell, Minneapolis, Minn. (Wm. G. Murphy, New York City and Thomas P. Helmey, Minneapolis, Minn., on the brief; Leonard H. Murray, Minneapolis, Minn., of counsel), for appellees Canadian Pac. Ry. Co. and for Empire Trust Co., Trustee of Debtor's First and Refunding Mortgage.

James L. Hetland and E. E. Boyner, Minneapolis, Minn., for appellee Minneapolis, St. Paul & Sault Ste. Marie R. Co.

Abraham K. Weber, New York City, for appellee Wisconsin Cent. Ry. Co., Debtor.

Josiah Brill, Minneapolis, Minn., Jaffin, Schneider, Kimmel & Galpeer, New York City (Irving J. Galpeer, New York City, of counsel), for appellee First and Refunding Mortgage Bondholders Committee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

COLLET, Circuit Judge.

These three consolidated cases constitute separate applications by different representatives of bondholders for an allowance of 6 per cent interest on First General Mortgage bonds of the Wisconsin Central Railway Company. The present controversy involves the sole question of what rate of interest should be allowed on First General Mortgage bonds during the period of receivership of the Wisconsin Central Railway Company, after the maturity date of those bonds. Wisconsin Central was placed in receivership in the United States District Court for the District of Minnesota on December 2, 1932. An equity receiver was appointed on that day and directed to take complete and exclusive control, possession and custody of all of its properties. The order of the court entered at the inception of the receivership contained the usual and typical provision enjoining the payment of Wisconsin Central's debts or the interference with its operation.

The First General Mortgage bonds now under consideration were fifty-year bonds, issued in 1899 and due July 1, 1949. They provided for the payment of annual interest at the rate of 4 per cent until due. No definite provision was made in the bonds for the rate of interest after the maturity date. The equity receivership proceeded from 1932 until in 1944 a petition for reorganization was filed and approved by the court. Subsequent thereto the bankruptcy proceedings have been continued under the provisions of 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. Again the usual and customary order was made in the reorganization proceedings, prohibiting the payment of debts of the debtor without the approval of the court and placing the entire operation of the debtor company under the control and direction of the court.

The First Mortgage bonds being amply secured, interest was paid during the period of bankruptcy (although not always at regular intervals) at the rate of 4 per cent up to July 1, 1949, the date of maturity of the bonds.

The mortgage and the bonds contained provisions which the trial court concluded made them New York contracts, with the result that in that court's opinion the law of the State of New York was applicable relative to the rate of interest to be paid in the absence of a specific provision therefor after the maturity date of the bonds unless equitable considerations to be ap-

plied under the Bankruptcy Act were controlling. The parties agree that by statute New York has provided that when obligations calling for the payment of interest do not specifically fix the rate thereof, the legal rate shall be 6 per cent per annum.

Representatives of the First General Mortgage bondholders filed application with the District Court seeking an order of that court providing for and directing the payment of interest on these bonds at the rate of 6 per cent from and after July 1, 1949, until the reorganization proceedings were terminated, upon the premise that the law of the State of New York applied in determining the rate of interest and that the court was bound to allow that rate. It is conceded that the security is ample for the payment of the interest at either 4 or 6 per cent. The trial court denied that application upon the authority of Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162, and ordered the payment of interest on the bonds at 4 per cent. This appeal is from that order.

The representatives of the debtor, appellees here, not only contend that the order of the trial court was proper upon equitable principles under the Bankruptcy Act, but also insist that the terms of the mortgage and bonds by fair implication call for the payment of interest at 4 per cent after the maturity of the bonds. The trial court held otherwise. While we are definitely inclined to the conclusion that appellees are correct in that contention, we do not deem it necessary to pass upon the question, because of our conclusion that the trial court's order is correct on equitable grounds under the authority of the Vanston case. Nor do we deem it necessary to do more than assume for the purpose of this case that the law of New York would apply, absent overriding provisions of the Bankruptcy Act, for reasons which will be noted.

Appellants contend in effect that the law of New York fixed an indivisible interest rate (of 6 per cent) which was the legal rate on the bonds after maturity and the only rate which the court was authorized to apply, and that the effect of the trial court's action in fixing the rate to be paid after maturity at 4 per cent was to unjustifiably split the rate fixed by New York law into two parts and to give that law only partial effect by allowing only two-thirds of the rate fixed by the New York statute.

Appellants argue that in the Vanston case the Supreme Court only condemned the allowance of interest on interest and that principles of equity do not require and the facts of this case do not authorize the court to disregard the 6 per cent simple interest rate fixed by the New York statute. As we read and interpret the majority opinion in the Vanston case, it goes further than to merely hold that provisions of a state law authorizing interest on interest may be disregarded by a Bankruptcy Court if principles of equity in the administration of that Act prompt so doing. It definitely establishes the rule of law that any state statute which is not consistent with principles of equity in the management and distribution of a bankrupt estate under the Bankruptcy Act may be disregarded by the Bankruptcy Court. The trial court did not apply in part and partially disregard the law of New York. It completely discarded the New York statute in fixing the rate of interest which in its judgment was compatible with equity and fairness. In doing so it properly interpreted and applied the rule announced in the Vanston opinion for the following reasons.

The majority opinion in Vanston v. Green, supra, makes it clear that the right to allowance of interest during bankruptcy does not necessarily spring from an authorization therefor by state law, but arises from equitable considerations resulting from the preferential position of secured creditors to general creditors. On that question the court said:

Vanston v. Green, supra. 329 U.S. loc. cit. 164, 67 S.Ct. loc. cit. 241: "But where an estate was ample to pay all creditors and to pay interest even after the petition was filed, equitable considerations were invoked to permit payment of this additional interest to the secured creditor rather than to the debtor." (Citing Coder v. Arts, 213 U.S. 223, 245, 29 S.Ct. 436, 53 L.Ed. 772;

Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244. See also Johnson v. Norris, 5 Cir., 190 F. 459.)

■ Vanston Bondholders Protective Committee v. Green further establishes the proposition that in determining the rate of interest to be paid secured creditors during the period of bankruptcy, where no definite rate is provided for in the contractual agreement between the debtor and its creditors, the law of the state of the contract need not be applied under the principles enunciated in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. On that question the court said:

"In determining what claims are allowable and how a debtor's assets shall be distributed, a bankrutpcy court does not apply the law of the state where it sits. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, has no such implication. * * * But bankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles." 329 U.S. loc. cit. 162, 67 S.Ct. loc. cit. 240, 91 L.Ed. 162.

\* \* \* \* \* \*

"For assuming, *arguendo*, that the obligation for interest on interest is valid under the law of New York, Kentucky, and the other states having some interest in the indenture transaction, we would still have to decide whether allowance of the claim would be compatible with the policy of the Bankruptcy Act. Cf. Kuehner v. Irving Trust Co., 299 U.S. 445, 451, 57 S.Ct. 298, 301, 81 L.Ed. 340." 329 U.S. loc. cit. 162, 67 S.Ct. loc. cit. 239.

\* \* \* \* \* \*

"It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor. * * * That the proceeding before us has moved from equity receivership through § 77B to Chapter X [11 U.S.C.A. §§ 207, 501 et seq.] in the wake of statutory change does not make these equitable considerations here inapplicable. A Chapter X or § 77B reorganization court is just as much a court of equity as were its statutory and chancery antecedents." 329 U.S. loc. cit. 165, 67 S.Ct. loc. cit. 241.

The responsibility resting upon the trial court to weigh the equities and determine whether the rate of interest provided by the law of New York should be applied or whether equitable principles under the Bankruptcy Act required the fixing of a different rate, the sole remaining question of importance is whether the trial court properly discharged that responsibility.

■ The payment of the principal of the bonds on July 1, 1949, was prohibited by order of the court. It was the intervention of bankruptcy and the assumption of the directing authority of the court that was the cause of the nonpayment of the bonds. As stated in Vanston v. Green, 329 U.S. loc. cit. 163, 67 S.Ct. loc. cit. 240: "The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate." Can it be said with reason, logic and fairness that because the court prevented the payment of these bonds on maturity the debtor's estate shall be in a sense penalized by increasing the rate of interest theretofore paid 2 per cent per annum, amounting to an increase in interest charges of approximately $250,000 a year, to the financial detriment and disadvantage of other creditors? We have no hesitancy in reaching the conclusion that broad principles of equity forbid such a course of action. To increase the distribution to these bondholders over and above the amount they had been receiving in interest, because the court in the orderly administration of the debtor's estate for the purpose of bringing about a ratable distribution of the assets of that estate among all the creditors has prevented the payment of the bonds at maturity, would in our judgment be inequitable and unjust to the other creditors. And we conclude that the circumstances amply justified the conclusion of the trial court that in the absence of a definite provision in the bonds fixing the rate of interest after maturity,

the preferred status of these secured bond-holders entitled them on equitable principles to interest during the remaining period of bankruptcy at 4 per cent [1], the rate which by agreement under the mortgage obligation had been paid for half a century, and which rate under present economic conditions is an appropriate rate of interest.

The order and judgment of the trial court should be and is affirmed.

1. Memorandum opinion of the trial court. In re Wisconsin Central Railway Co., D.C., 93 F.Supp. 579.