**In re W.S. SHEPPLEY & COMPANY, an Illinois corporation, Debtor.**

**Bankruptcy No. 84–01160.
Contested No. 949.**

United States Bankruptcy Court,
N.D. Iowa.

Dec. 19, 1984.

Ronald R. Peterson and Catherine Steege, of Jenner & Block, Chicago, Ill., and Alfred Hughes of Hughes & Trannel, Dubuque, Iowa, for debtor-in-possession.

F.L. Burnette, II, and Michael W. Thrall of Nyemaster, Goode, McLaughlin, Emery, O'Brien, Des Moines, Iowa, for Metropolitan Life Ins. Co.

Gary K. Norby and Michael J. Melloy of O'Connor & Thomas, Dubuque, Iowa, for movant First Nat. Bank of Dubuque.

Findings of Fact, Conclusions of Law; ORDERS, with Memorandum, Denying the Motion of Metropolitan Life Insurance Company and First National Bank of Dubuque to Lift the Automatic Stay

WILLIAM W. THINNES, Bankruptcy Judge.

The final hearing on the Motion of Metropolitan Life Insurance Company and First National Bank of Dubuque to lift the automatic stay imposed by this Court upon the filing of the Chapter 11 bankruptcy by W.S. Sheppley & Company on the 18th day of September, 1984, was held after proper notice on the 13th day of November, 1984. After reviewing the evidence adduced at trial and the briefs submitted by the parties, this Court now makes the following Findings of Fact, Conclusions of Law, and Orders pursuant to Federal Rule of Bankruptcy Procedure 7052. This opinion is issued to supplement the Orders entered herein on December 12, 1984.

## FINDINGS OF FACT

1. W.S. Sheppley & Company (hereinafter Sheppley) is an Illinois corporation with its principal place of business in Dubuque, Iowa. It is basically a single asset corporation with that asset being a Class A office building in Dubuque, Iowa, known as the Dubuque Building. The Dubuque Building was purchased by the Debtor-in-Possession from the Roshek Department Store in 1970. Since that time the Debtor-in-Possession has renovated all of the building with the exception of the basement which, at the current time, is essentially in the same condition that it was at the time the Debtor-in-Possession purchased the building.

2. The Debtor-in-Possession obtained funding for its renovation project from Banco Mortgage Company. On January 26, 1977, the Debtor-in-Possession executed a promissory note and real estate mortgage as well as other supplemental documents in favor of Banco Mortgage Company in the amount of $3,100,000.00. This mortgage was subsequently assigned to Metropolitan Life Insurance Company, a movant herein. It was stipulated between the parties that the principal balance due and owing on the Metropolitan mortgage is $3,136,856.43. This mortgage has a face interest rate of 9.27 percent and a default interest rate of 12 percent.

3. Supplemental financing for the renovation undertaken by the Debtor-in-Possession was obtained from First National Bank of Dubuque, Iowa. On October 28, 1977, a real estate mortgage was granted to the First National Bank of Dubuque by the Debtor-in-Possession. This mortgage currently secures two promissory notes with principal balances of $1,850,000.00 and $295,000.00, respectively. The first note bears an interest rate of 9 percent per annum, while the second bears an interest rate of 15 percent per annum.

4. The last payment made on the Metropolitan mortgage was made on December

7, 1983, and was the July 1, 1983 payment. Metropolitan has not received any payments for the time period from August, 1983 onward. The Debtor-in-Possession has made no principal or interest payments on the notes to First National Bank.

5. On December 19, 1983, Metropolitan Life Insurance Company filed a petition in equity in the Iowa District Court in and for Dubuque County, Iowa, seeking foreclosure of its first mortgage, assignment of rents, and security interest in personal property. The petition was subsequently amended and substituted on April 26, 1984. On January 4, 1984, the Defendant First National Bank of Dubuque answered the foreclosure petition and counterclaimed seeking to foreclose its own mortgage on the building.

6. On September 18, 1984, W.S. Sheppley & Company filed its petition for relief under Chapter 11 of the Bankruptcy Code. The motion for relief from the stay was filed just seven days after the petition was filed.

7. It is agreed by the parties that for purposes of this hearing, the value of the building is $5,200,000.00. Utilizing the default rate of interest for purposes of determining if adequate protection has been offered, Metropolitan has an equity cushion of $1,548,697.73 or, 42.4 percent ($1,548,698 ÷ $3,651,302 = 42.4%). $3,651,302 is the total of the principal, $3,136,856.43, plus the default interest to the date of the hearing, $514,445.84.

8. The real estate taxes for the property in question have been paid. The Debtor-in-Possession has also maintained general liability insurance on the building; automobile liability insurance; excess liability insurance; insurance on the contents of the premises; insurance for loss of rent; insurance for coverage of fire sprinkler leakage; and, casualty insurance on the building with all of the premiums having been paid through November 12, 1984. The Certificate of Insurance indicates that the policy will not expire until June 1, 1985, and that the insurance is paid on a monthly basis.

9. The Debtor-in-Possession does have maintenance personnel on staff and has contracted for cleaning and custodial work to be done on the premises. The property is currently maintained in a good state of physical repair with the exception of the roof which the Debtor-in-Possession intends to repair before the end of 1984 at a cost of $90,000.00.

10. The Debtor-in-Possession has made the following offer of adequate protection to the creditors in this case; payments of $30,000.00 per month beginning January 1, 1985; payments to a real estate tax and insurance escrow on the building and contents; and replacement of the roof at a cost of $90,000.00 prior to January 1, 1985. The Debtor-in-Possession also has utility increase clauses written into 99.9 percent of its leases. Said clauses cover increases in utility costs as well as taxes on the building and protect the Debtor-in-Possession from the effects of increasing utility costs and taxes.

11. The Debtor is currently engaged in discussions with prospective tenants to rent the basement. In addition, the Debtor-in-Possession is also considering the formation of a limited partnership in the form of a tax syndication that could be used to benefit investors through depreciation as well as net operating loss carry-forwards which total $1,400,000.00. The President of the Debtor-in-Possession also testified that it is considering the alternative of liquidating the property. A third alternative being considered by the Debtor-in-Possession is refinancing with a new second mortgagee. A fourth option being considered by the Debtor-in-Possession is the sale of the condominiums in the building.

12. The current occupancy rate of the Dubuque Building exclusive of the basement area is 89 percent. The President testified that he believes the occupancy of the building can be increased to 95 percent. He also indicated that the basement can be renovated in a fashion which would allow it to rent out an additional 30,000 square feet of space. The entire building including the basement has approximately 200,000

square feet of rentable space. Such a renovation of the basement would increase the rentable area by 17.6 percent.

## CONCLUSIONS OF LAW

1. The movants have established that Debtors have no equity in the property as required by 11 U.S.C. § 362(g).

2. Since this building is essentially the only asset of this Debtor-in-Possession any type of effective reorganization would be impossible without the building. Therefore, the Debtor-in-Possession has proven the building is essential for an effective reorganization as required by 11 U.S.C. § 362(d)(2)(B).

3. Metropolitan Life Insurance Company is presently entitled to the default rate of interest as set forth in its mortgage for purposes of measuring adequate protection since Metropolitan is an oversecured creditor and the default rate of interest is not a penalty interest. 11 U.S.C. § 506(b); *In re Berry Estates, Inc.*, 34 B.R. 612, 615–616 (Bkrptcy.S.D.N.Y.1983).

4. The Debtor-in-Possession has sustained its burden on the question of adequate protection as to movant, Metropolitan Life Insurance Company, given the 42.4 percent equity cushion as of the date of the hearing. In addition, the Debtor-in-Possession has offered to continue payment of the real estate taxes and insurance on the building and to make a payment of $30,000.00 per month beginning on January 1, 1985. The current interest on the Metropolitan debt accruing at a rate of 12 percent is $1,045.62 per day or $31,804.28 per month. Since there will not be a decrease in the value of the building the equity cushion alone is sufficient to protect Metropolitan at this default rate of interest for approximately 4 years ($1,548,698 equity cushion divided by $31,804 monthly interest equals 48.69 months).

5. The Debtor-in-Possession has also met its burden with respect to adequate protection being afforded the second mortgagee, First National Bank of Dubuque. The Court makes this conclusion because the payment of $30,000.00 per month by the Debtor-in-Possession to First National Bank in addition to the tax and insurance escrow substantially protects the second mortgagee as there is a maximum shortfall of $1,804.28 per month while the debt owed to First National Bank exceeds $2,000,-000.00. Since both creditors are substantially adequately protected, the Court concludes the automatic stay should remain in effect to allow Debtor-in-Possession time to formulate a Plan of Reorganization.

## ORDERS

IT IS HEREBY ORDERED that the automatic stay afforded by 11 U.S.C. § 362(a) shall remain in effect provided that the Debtor-in-Possession makes payments of $30,000 per month to First National Bank beginning in January of 1985. The parties may reapply to this Court for a further examination of the question of adequate protection upon a substantial change in circumstances.

## MEMORANDUM

■ In an action to lift the automatic stay, the movants must establish the validity and perfection of their security interests, the amount of the debt and other allowable costs secured by their claims and must carry the ultimate burden of proof with respect to equity. *In re Irving A. Horns Farms Inc.*, 42 B.R. 832, 836 (Bkrptcy.N.D. Iowa 1984); *United Companies Financing Corp. v. Brantley*, 6 B.R. 178, 184 (Bkrptcy.N.D.Fla.1980); 11 U.S.C. § 362(g). The moving parties in this litigation have established the validity and perfection of their security interests in the Dubuque Building. With respect to the question regarding the amount of the debt and other allowable costs secured by the claims of the various creditors, a threshold issue that must be addressed is whether Metropolitan Life Insurance Company is entitled to the default rate of interest of 12 percent as provided in the promissory note secured by the real estate mortgage.

A determination of the appropriate rate of interest to be allowed on the Metropoli-

tan claim is crucial since it is determinative of the accruing interest charges on the Metropolitan loan as well as the equity available to cover the secured debt to First National Bank. The parties have stipulated that the principal amount of the Metropolitan loan is $3,136,856.43 and that the non-default rate of interest is $807.74 per diem while the default rate of interest is $1,045.62 per diem. Calculating the indebtedness to the date of hearing, November 13, 1984, reveals that if the non-default rate of interest is applied the total indebtedness to Metropolitan Life Insurance Company for the principal and interest on its note exclusive of attorney's fees and other costs of collection, was $3,534,265.82. Utilizing the default interest rate, the principal and interest on Metropolitan's debt through the date of hearing is $3,651,302.27. The difference in interest due at the time of the hearing between the non-default rate and the default rate is $117,036.45. The monthly interest accumulation at 9.27 percent is $24,232.05. The monthly interest utilizing the default rate of interest of 12 percent is $31,804.28.

Given the Debtor-in-Possession's offer of a payment of $30,000.00 per month to begin January 1, 1985, the importance of the difference in interest rates is keenly illustrated. In the event 9.27 percent, or the non-default rate, is chosen, the payment of $30,000.00 per month in addition to the maintenance of insurance as well as payment of taxes and other accruing expenses on the building would be more than sufficient to service the interest on the debt to Metropolitan. As such, the payment would clearly constitute adequate protection in of itself. *See, Horns,* 42 B.R. 832. If, however, the default rate of interest is utilized, there will be a shortfall of $1,804.28 per month on the interest service charges of the Metropolitan debt. Therefore, the value of the remaining property available to secure the debt to First National Bank of Dubuque would be declining by $1,804.28 per month. This Court has recently decided the case of *In re Irving A. Horns Farms Inc.,* 42 B.R. 832 (Bkrptcy.N.D.Iowa 1984), in which the subject farmland was

pledged as security for a first and second mortgage holder. In that case, this Court found that the equity was declining by $6,724.00 per month through interest charges on the prior secured debt. The decline in the available value of the property securing the second mortgage holder's mortgage was utilized as the basis for lifting the automatic stay afforded by 11 U.S.C. § 362(a). *Horns,* 42 B.R. at 837–838. In *Horns,* the debtor made no offer of adequate protection.

The Debtor-in-Possession has cited the case of *In re Forest Hills Associates,* 40 B.R. 410, 11 B.C.D. 1145 (Bkrptcy.S.D.N.Y. 1984) for the proposition held that the utilization of default rate of interest is not appropriate. Having reviewed the decision in *In re Forest Hills Associates,* this Court concludes that it is inapplicable to the case at bar for the following reasons: first, *Forest Hills* was a case analyzing the effects of sections 1123 and 1124 regarding the confirmation of a plan of reorganization while this case involves litigation regarding the automatic stay provided for in 11 U.S.C. § 362(a). Secondly, in *Forest Hills* the debtor-in-possession had proposed a plan of reorganization which would cure the default on the first mortgage and essentially reinstate that mortgage as though the default had not occurred as is allowed by 11 U.S.C. § 1124(2).

In the instant case, no Plan of Reorganization has been filed by the Debtor-in-Possession. Indeed, the 120-day exclusive period for the Debtor-in-Possession to file its plan has not expired. Rather, the only evidence adduced at trial indicates that numerous options are being considered as potential plans of reorganization. If, in fact, a Plan of Reorganization is proposed by this Debtor-in-Possession which seeks to cure the default the question of the amount of the allowed secured claim can then be considered in light of section 1124(2) and the decision of the court in *Forest Hills* may well be appropriate.

■ For purposes of stay litigation, this Court concludes that the better reasoning

regarding the applicability of default rates of interest as provided in a mortgage is set forth in *In re Berry Estates, Inc.*, 34 B.R. 612 (Bkrptcy.S.D.N.Y.1983). In *Berry* the Bankruptcy Court was presented with an action by the Jamaica Savings Bank pursuant to 11 U.S.C. § 502 to determine the amount of mortgage indebtedness owing from the debtor including its post-maturity interest. The parties had agreed when the mortgage was executed in 1971 that the default rate of interest would be at the highest rate allowed by New York law. At the time the default occurred, New York had no ceiling on interest. Therefore, the court determined an appropriate interest to be allowed after default. In concluding that a post-maturity interest rate higher than the pre-maturity interest rate was appropriate, the court in *Berry* stated the following:

"Although the debtor argues that a higher post-maturity interest rate is a penalty, it could have avoided paying the higher rate by satisfying the mortgage at maturity. The higher rate merely reflects the fact that a mortgagor who is unable to pay a mortgage at maturity is a greater risk then [sic] a mortgagor not in default. Hence, a less creditworthy entity must pay a premium to obtain the continued use of money. Additionally, a higher post-maturity rate of interest is intended as an inducement for the mortgagor to pay at maturity and not delay the mortgagee beyond the agreed maturity of the loan."

*Berry,* 34 B.R. at 615–616.

Although the default rate of interest provided for in the note by agreement of the parties is the appropriate rate of interest to be applied in this instance, this Court expressly limits this holding to litigation analyzing the concept of adequate protection. The Court expressly declines to hold that the default rate of interest found to be applicable for purposes of the stay litigation herein is the appropriate rate of interest to be applied in the event that the Debtor-in-Possession seeks to cure the defaults pursuant to 11 U.S.C. § 1124(2).

■ The moving parties in this litigation have met their burden of proof with respect to Debtor-in-Possession's lack of equity in the building. The agreed value of the building for purposes of this stay litigation is $5,200,000.00. As of the date of the hearing, the total indebtedness on the Metropolitan debt, exclusive of costs and attorney's fees for collection, was $3,651,302.27. Subtracting the amount of the principal and interest of the Metropolitan debt from the agreed value of the building leaves an equity of $1,548,697.73 to secure the indebtedness to First National Bank of Dubuque. It has been stipulated by the parties that the principal amount of the debt to First National Bank is $2,145,000.00. Given that the Movants have proven that there is a lack of equity in the subject premises, the Debtor-in-Possession now has the burden of proof regarding all other issues in this stay litigation. *Horns,* 42 B.R. at 837; 11 U.S.C. § 362(g).

*Necessity for an Effective Reorganization*

■ Pursuant to 11 U.S.C. § 362(d)(2), the automatic stay imposed by this section cannot be lifted unless there is a showing that there is a lack of equity *and* a showing that the property is not "necessary to an effective reorganization." While Movants have succeeded on the first point, lack of equity, that success in and of itself is not sufficient to justify lifting the stay. The Movants urge that the Debtor-in-Possession cannot effectuate a reorganization under any set of circumstances. This Court has recently decided the case of *In re Keller,* 45 B.R. 469 (Bkrtcy.N.D.Iowa 1984), where it stated: "The term 'necessary for an effective reorganization' does not require proof that a plan of rehabilitation can be confirmed. This conclusion is born out by the fact that an effective reorganization can include a liquidation." *Keller,* at p. 476. *See also* 11 U.S.C. § 1123(b)(4). A plan of liquidation is allowed in a Chapter 11 bankruptcy so long there is not a continuing loss to the estate.

**480**

*In re Keller,* at p. 476; *In re Koopmans,* 22 B.R. 395, 403 (Bkrptcy.Utah 1982).

■ The Court disagrees with the decision of the Fourth Circuit in *Riggs Nat. Bank of Washington, D.C. v. Perry,* 729 F.2d 982 (4th Cir.1984) in which the court concluded, "In cases where the single asset of the debtor is *real* property, the court shall grant relief from the stay if the debtor has no equity in the collateral, thereby allowing the creditor to proceed with his foreclosure." (Emphasis added). S.Rep. No. 989, 95th Cong., 1st Sess. 5, reprinted in 1978 U.S. Code Cong. & Ad News, 5787, 5791. *Riggs,* 729 F.2d at 985. To follow the dictum in *Riggs* would not be in compliance with the purpose of the Bankruptcy Code which is to favor reorganization whenever realistically feasible. The Debtor-in-Possession is considering the sale of condominiums in the building such that a reorganization could be possible and allowing the completion of a foreclosure would almost certainly eliminate any possibility of reorganization.

■ Property is necessary for an effective reorganization whenever it is necessary either in the operation of the business or in a plan, to further the interests of the estate for rehabilitation or liquidation. *In re Keller,* at p. 477; *In re Koopmans,* 22 B.R. 395, 407 (Bkrptcy.Utah 1982). In the instant case the Dubuque Building is the major asset of the Debtor-in-Possession. The only other assets owned by the Debtor-in-Possession include two computers as well as other equipment necessary to run an office building. Given that the Dubuque Building is the sole major asset of the Debtor-in-Possession, this Court concludes that the Debtor-in-Possession has proven that the Dubuque Building is essential to an effective reorganization as required by 11 U.S.C. § 362(d)(2)(B). Therefore, this Court concludes that the automatic stay imposed by 11 U.S.C. § 362(a) cannot be lifted on the basis of 11 U.S.C. § 362(d)(2). Having examined 11 U.S.C. § 362(a)(2), the Court will now examine the proper mode of analysis regarding adequate protection then review the offer of

adequate protection made to the creditors by the Debtor-in-Possession.

*Mode of Analysis*

■ When determining whether a creditor's interest in collateral is adequately protected without recourse to relief from the automatic stay, lack of an equity cushion alone should not be determinative of the issue; rather, necessary evaluation is, first, of stability of collateral, second, of likelihood of reorganization, and, third, of credibility of debtor's protection plan. *In re Philadelphia Consumer Discount Co.,* 37 B.R. 946 (E.D.Pa.1984). The record is void of any evidence indicating that the value of the collateral, the Dubuque Building, will decline. In fact, there is evidence in the record to support the conclusion that the Dubuque Building may well increase in value. Therefore, the stability of the collateral value cannot be questioned. In fact, the Debtor has proposed as part of its plan of adequate protection to install a new roof on the Dubuque Building at a cost of $90,000.00. Certainly, the installation of a new roof will prevent any diminution in the value of the collateral and should increase the value of the collateral. In addition, the Court notes that all of the witnesses who had viewed the building agree that the building has been maintained in excellent condition and that the type of tenants who currently occupy the building are the most sought after tenants in Dubuque. These tenants include major insurance companies (including Metropolitan), major stockbroker companies, orthodontists, dentists, major law firms as well as a computer software company.

■ In review of the likelihood of reorganization this Court notes that the bankruptcy petition was filed on September 18, 1984. The hearing on the Motion to Lift the Stay was held on November 13, 1984, a time not even two months after the filing of the initial petition. The Debtor's exclusive period for filing its Plan of Reorganization without extension will not expire until January 16, 1985. Having reviewed the evidence and given the early stage of

the proceedings at which the Motion to Lift the Stay has been filed, the Court concludes that the likelihood of reorganization is good although the form of reorganization at this time is not entirely clear. Therefore the Court concludes that its decision in this matter should facilitate reorganization rather than essentially eliminate any possibility of reorganization that the Debtor could have.

The Court is likewise impressed with the credibility of the Debtor's offer of adequate protection. There is no testimony to indicate that the Debtor-in-Possession will not be able to make payments of $30,000.00 per month as proposed after January 1, 1985. In addition, the Debtor-in-Possession is actively soliciting a tenant or tenants for the basement area of the building which would increase the rented space in the building by some 17.6 percent. The Debtor-in-Possession will also be making all of the real estate tax payments as well as keeping the numerous types of insurance referred to previously in full force and effect.

*Adequate Protection*

■ Adequate protection afforded to creditors in bankruptcy is interim protection. It is a palliative of the worst: reorganization, dismissal, or liquidation which will provide the final relief for the creditors. *In re Keller,* at p. 477; *In re Alyucan Interstate Corp.,* 12 B.R. 803, 806 (Bkrptcy.Utah 1981). Given this Court's conclusion that the default rate of interest is the applicable interest to be utilized for determination of the adequate protection being afforded creditors in this case, the Court is hard pressed to state that there is no diminution in the value of the collateral securing the mortgage of First National Bank at the current time. The Debtor-in-Possession has offered to make payments of $30,000.00 per month beginning in January of 1985. Given the parties' stipulation that the default per diem interest on the Metropolitan debt is $1,045.62, the monthly interest accrual would be $31,804.28. This leaves a shortfall of $1,804.28 per month in the value of the collateral securing the

mortgage to First National Bank. Given the magnitude of the debts secured by the mortgages on the Dubuque Building and the *de minimis* decline in value, this Court refuses to hold that adequate protection requires a complete and absolute protection of the "value of the property securing the indebtedness." This Court therefore expressly declines to follow *In re Development, Inc.,* 36 B.R. 998, 1006 (Bkrptcy.Hawaii 1984) wherein the court held "adequate protection must be completely compensatory."

Metropolitan Life Insurance Company is not suffering any loss that is not adequately protected given the agreed value of the property in excess of the debt owed to Metropolitan. At worst, First National Bank will only suffer an impairment of $1,804.00 per month while the principal amount of the debt due and owing to First National Bank is in excess of $2,000,000.00.

The Court concludes that the Debtor-in-Possession should make its $30,000 adequate protection payments to First National Bank. The Court is conscious of the fact that there is a slight diminution in the value of the collateral securing the notes to the First National Bank. Such slight diminution in the value of the collateral securing the Bank's notes does not constitute a lack of adequate protection given the size of the debt to the Bank. In addition, this bankruptcy case is less than 100 days old and the Debtor-in-Possession is considering several possible options as its Plan of Reorganization.

*Conclusion*

If the Court were to lift the stay it would be exercising "Draconian logic" relying only upon the minuscule shortfall of $1,804 per month between the proffered payment and the worst case scenario of accruing default interest. The Court refuses to exercise "Draconian logic" or to adopt the concepts set forth in *American Mariner,* 734 F.2d 426 (9th Cir.1984). This Court has previously refused to adopt *American Mariner,* and continues to do so. *In re Keller,* at p. 478.