In re LANDSEA MARKETING, INC., Suisun Bay Terminals, Inc., Landsea Terminals, Inc., Landsea Holding Company, Landsea Oil Company, Debtors.

BANQUE PARIBAS (NEW YORK BRANCH) a French corporation, Plaintiff(s),

v.

LANDSEA MARKETING, INC., Suisun Bay Terminals, Inc., Landsea Terminals, Inc., Landsea Holding Company, Landsea Oil Company, Defendants.

Bankruptcy Nos. SA 85–02723 PE to SA 85–02727 PE.
Adv No. M5–1450.

United States Bankruptcy Court, C.D. California.

Oct. 10, 1985.

Joel R. Ohlgren, Rogers & Wells, Los Angeles, Cal., for movant Banque Paribas.

Jeffrey C. Coyne, Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., for respondent/debtors.

MEMORANDUM OF DECISION

PETER M. ELLIOTT, Bankruptcy Judge.

The bank's motion for relief from stay came on regularly for hearing and was heard on September 16, and September 27, 1985 and submitted for decision. The bank is owed in excess of $68 million and the value of the collateral for the loan is less than one-half of that amount. The motion was tried on the theory that the bank was entitled to adequate protection based upon the value of the collateral under *In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984). It is apparently the bank's theory that the debtor will not be able to provide adequate protection on the value of the collateral and it expects to get relief from stay on that ground. However, if the debtor is able to furnish adequate protection under the *American Mariner* theory, the bank reserves the right to

move for relief from stay on any other ground available to it.

Because of *American Mariner*, the valuation evidence had an Alice in Wonderland quality to it. This is the first time in my memory, and I venture to say I have tried thousands of these relief from stay matters, that the debtor is urging a low valuation of the collateral and the creditor is asserting a higher valuation of the collateral.

## VALUATION

I find the real property to have a value of $5 million and the improvements to have a value of $23 million for a total valuation of $28 million.

## DEPRECIATION

The improvements are depreciating at the rate of 5% per year and the bank is entitled to $95,834 per month as protection against the depreciation in the value of its collateral. This payment should start immediately. The creditor's appraiser offered his opinion that the improvements were depreciating at the rate of 5.62% per annum and the debtors' appraiser estimated 1.8% per annum. However, at Page 40 of McKay's appraisal, Exhibit A, in valuation based upon estimated income, Mr. McKay assumes that the remaining economic life of the plant to be 20 years. From the testimony and from other evidence, I am satisfied that the appropriate depreciation rate is 5%.

## INTEREST RATE

On Monday, September 23, 1985 the prime rate was 9.5%. On the same date, the LIBOR rate (London Interbank Offered Rate) was between 8–1/8% to 8–11/16%, depending upon the length of the advance (defendants' Exhibit C).

The debtor, of course, argues for the lower LIBOR rate on the theory that that's what the bank pays for funds that it in turn loans out to its customers. However, I agree with the bank that the *American Mariner* decision intended that the creditor is entitled to compensation for the delay in enforcing its rights in the form of monthly interest payments at the market rate. I am satisfied that market rate, as used in the *American Mariner* decision, is the interest rate the bank could earn on the funds, not on the cost of funds to the bank.

I find that the market rate, for the purpose of this decision, is prime plus 2% or 11.5%. This rate was established by independent testimony and it also appears to be exactly the same rate as contained in the credit agreement between the parties dated March 31, 1981.

## CALCULATION OF ADEQUATE PROTECTION

If the bank were to conduct its foreclosure sale today, it would receive $28 million. However, the property is subject to a senior encumbrance to the Bank of America with a balance of approximately $3.5 million and therefore the bank would only net $24.5 million. Putting that sum out at 11.5% per annum, the bank would earn $234,783 per month. This is in addition to the depreciation figure of $95,834.

## COMMENCEMENT OF ADEQUATE PROTECTION PAYMENTS

Both parties have argued at length the meaning of Footnote 12 to the *American Mariner* decision. That footnote provides, in part, as follows:

> First, to avoid over compensating the secured creditor, the timing of adequate protection should take account of the usual time and expense involved in repossession and sale of collateral.

I'm not aware of anything in the record indicating whether it is likely that some third party may purchase the property at the foreclosure sale or in the alternative that the bank may acquire the property by way of a credit bid. Also, I'm not aware of anything in the record that would indicate how long the bank might be expected to hold the property before liquidating the collateral. Under 11 U.S.C. § 362(g), the debtor has the burden of proof on this issue. Therefore, I find in the bank's favor

438

on the issue, to wit, that the bank will realize on its collateral at the foreclosure sale. A notice of default was recorded on July 10, 1985. Although the 90 days has run to reinstate, the bank has not been able to publish its sale. I will take judicial notice that the sale can be held approximately four weeks after the commencement of publication. I will therefore hold that the debtor must commence adequate protection payments of $234,783 four weeks from the date that I sign the order based upon this memorandum.

However, the bank is entitled to rents, issues and profits under its deed of trust and would be entitled to the appointment of a receiver pending the completion of its foreclosure sale. According to Mr. McKay's figures, the debtor is throughputting between 9,300,000 to 10,500,000 barrels per annum at the present time. I will choose a figure of 10,000,000 barrels per annum and at Mr. McKay's estimate of 42 cents per barrel, that equals $4,200,000 in gross income. From that figure should be deducted the expenses of operating the facility of $2,215,000, leaving net income of $1,985,000 or $165,416 per month.

### CONCLUSION

In conclusion, as adequate protection, the bank is entitled to $165,416 in profits and $95,834 in depreciation commencing immediately and, commencing four weeks from the date of an order entered on this memorandum, $268,324 plus the depreciation of $95,834 per month.

The bank is to prepare an order in accordance with this memorandum and, unless waived, findings of fact and conclusions of law.