In re James M. **PADGETT** and Donna J. Padgett, aka Mason Properties, Debtors.

**HUNTER SAVINGS ASSOCIATION, Movant,**

v.

**James M. PADGETT and Donna J. Padgett, and Mason Properties, an Ohio Limited Partnership, Respondents.**

**Bankruptcy No. 1–87–00599.**

United States Bankruptcy Court, S.D. Ohio, W.D.

June 4, 1987.

Harold Jarnicki, Lebanon, Ohio, for respondents.

John D. Squires, Dayton, Ohio, for movant.

## DECISION AND ORDER ON MOTION TO LIFT STAY

BURTON PERLMAN, Bankruptcy Judge.

This Chapter 11 case was filed jointly by husband and wife. Movant moved to lift the stay. At the hearing on the motion, the evidence was that debtor James M. Padgett is a real estate developer and it is his affairs with which this case is for the most part involved. We will hereafter refer to debtor in the singular for that reason, and such reference should be understood to refer to James M. Padgett.

The controversy with which the present motion deals relates to three real estate properties:

1. "The Farm Property" located on 7505 Mason-Montgomery Road, Mason, Ohio, consisting of two tracts of 83.516 and 18.727 acres, respectively. This real estate is titled in the name of both debtors.

2. "The Residential/Rental Property" located at 1017 Stanwood Drive, Lebanon, Ohio, Lot 3608, Rosemarie Heights, Section 1. This property is titled in the names of both debtors.

3. "The Walnut Farms Property", consisting of "Mason Tract 1" and "Mason Tract 2". "Mason Tract 1" on Bunker Oaks Drive, Mason, Ohio, consists of 13 lots of Walnut Farms Subdivision, Block "B", together with an adjoining unplatted 5.977 acre parcel. This property is titled in the name of Mason Properties, an Ohio limited partnership. In his petition, debtor said that this is a trade name he uses. "Mason Tract 2" is located north of Donna Jean Drive, across from Bunker Oaks

Drive in Mason, Ohio, and is an unplatted 5.093 acre parcel.

After reviewing the evidence presented at the hearing, we find that as to the Residential/Rental property at 1017 Stanwood Drive there appears to be some equity in this property, since debtor has an offer to purchase it at the price of $60,-000.00. However, because the magnitudes involved in this property are inconsequential in relation to the other properties, we disregard the Residential/Rental property in our further consideration.

Movant has a first mortgage on "The Farm Property", giving it a claim as of the filing date of $399,598.30. There is a first mortgage on "The Walnut Farms Property" held by movant, giving it a claim as of the date of filing of $1,188,308.77. This mortgage was obtained by movant by assignment from Home State Savings. There is a subordinate mortgage applicable to both "The Farm Property" and "The Walnut Farms Property" giving rise to a claim by movant as of the date of filing in the amount of $621,384.42. This mortgage also is held by movant by assignment from Home State Savings.

We turn now to a resolution of the issues here presented. Prior to the final hearing, debtor sought discovery of a certain document in the possession of movant whereby indemnification of losses in Home State mortgages may be provided by the State of Ohio. Because of the expedited time schedule for motions such as the present (§ 362(e)), usual discovery procedures, including time periods, cannot be adhered to, and some informality inevitably occurs. Here, debtor requested the document at a pretrial held well before the final hearing. Movant withheld the document on grounds that it contained confidential information. Movant never sought a protective order, but elected only on the day prior to the final hearing to offer access to the document to debtor's attorney, but only under conditions dictated by movant. There was no time prior to final hearing to bring this dispute to the attention of the court, because movant refused to extend the date of the final hearing in order to permit that to

happen. The actual facts about indemnification of movant by the State of Ohio with respect to loans which had originated with Home State Savings therefore were not presented at the final hearing.

■ Under these circumstances, we hold that the application of sanctions pursuant to F.R.Civ.P. 37, made applicable here by B.R. 9014, is in order. The conduct of movant effectively falls within that described at Rule 37(d)(3), and the sanction of Rule 37(b)(2)(A) will be applied. That there was no express court order of which that conduct was violative is of no consequence. *Bowmar Instrument Corp. v. Continental Microsystems, Inc.*, 497 F.Supp. 947, 959 (D.C. S.D. N.Y.1980). The sanction to which we refer is:

> (h) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order; * . * *

■ In furtherance of the stated sanction, we find the evidence to be that movant will be fully indemnified by the State of Ohio as to any losses which it suffers on mortgage obligations derived by assignment from Home State Savings. Specifically, in the present case, debtor is entitled to have the evidence assumed to be that movant will be indemnified on a foreclosure for any loss it may suffer on the first mortgage on "The Walnut Farms Property", as well as on the subordinate mortgage held by movant by assignment from Home State Savings, on both "The Farm Property" and "The Walnut Farms Property". As we shall see in a moment, this view of the evidence is significant particularly with respect to "The Farm Property", for we hold that movant is, with respect to the subordinate mortgage derived from Home State Savings, adequately protected by any State promise of indemnification. *See, In re Besler,* 19 B.R. 879, 884 (Bankr. S.D.1982), where a substitute lien by a party other than the debtor was held to provide adequate protection to a mortgagee. A right to indemnification by a governmental unit provides adequate protection at

least as effectively as does a lien on private property. The three species of adequate protection mechanisms stated in § 361 are not meant to be exclusive.

The foregoing disposes of movant's contention that it is not adequately protected. Supplementing our conclusion that movant is adequately protected as to the Home State Savings derived loans, it is clear that as to "The Farm Property", movant is otherwise adequately protected by an equity cushion as to its first mortgage in the amount of $399,589.30. This conclusion follows from the appraisal evidence either of movant's expert of $700,000.00 or that of debtor at $900,000.00. *See, In re Mr. D. Realty Co.,* 27 B.R. 359 (Bankr.S.D.Ohio 1983).

Finally, on the score of adequate protection, debtor stated that he intended to abandon "The Walnut Farms Property". We make such abandonment a condition of our holding that movant is adequately protected. There is no equitable reason why movant should not be permitted to proceed to foreclosure on this property.

 As a second basis for relief from stay, movant relies upon § 362(d)(2), which requires that it be established (1) that debtor have no equity in the subject property, and (2) that the property not be necessary to an effective reorganization. As to the first element, the burden of proof is, as provided at § 362(g), upon movant. Movant carried this burden at the final hearing, showing an absence of equity in debtor when all liens against the property are taken into account. *Stewart v. Gurley,* 745 F.2d 1194 (9th Cir.1984).

Debtor had the burden of proof as to the second element. To carry this burden, debtor contended that if "The Farm Property" were left in his hands, he could, in a reasonable period of time, accomplish its sale at a price which would satisfy lien claimants and produce an overage which could be distributed to unsecured creditors.

Movant argues on this point that there is no realistic hope that debtor can reorganize since debtor has no resources with which to fund a viable enterprise. Resumption of business is not the only objective which a Chapter 11 case may seek, for the statute itself, at 11 U.S.C. § 1123(b)(4), provides that a Chapter 11 plan may provide for "the sale of all or substantially all of the property of the estate." A liquidation advantageous to creditors clearly would satisfy § 362(d)(2)(B). *See, In re Keller,* 45 B.R. 469, 471 (Bankr.N.D.Iowa 1984).

The motion is denied, on condition that debtor promptly abandon "The Walnut Farms Property".

So Ordered.