In re OLD TOWN HISTORIC BUILD-
ING, LTD.: a California Limited
Partnership Debtor.

TOKAI BANK OF
CALIFORNIA, Movant,

v.

OLD TOWN HISTORIC BUILDING
LIMITED PARTNERSHIP,
Respondent.

Bankruptcy No. LA–86–20659–JNB.
Ref. No. M7–01512–JNB.

United States Bankruptcy Court,
C.D. California.

Oct. 8, 1987.

Daniel J. McCarthy, Hill, Farrer & Burrill, Los Angeles, Cal., for debtor.

Stephen Skacevic, Frandzel & Share, Beverly Hills, Cal., for Tokai Bank of California.

Leonard A. Goldman, Goldman, Gordon & Lipstone, Los Angeles, Cal., for 41 East Union St. Bldg. Inv. Ltd.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.[*]

Heard on May 20 and 21, 1987, on the debtor-landlord's motion for leave to compromise a dispute with its tenants, Wesley and Mary Mann, and also on the debtor's objection to the motion of Tokai Bank of California for relief from stay or, alternatively, for adequate protection. Further hearing on the motion for relief from stay was held on August 17, 1987. A creditor, 41 East Union Street Building Investment, Ltd., holder of the second deed of trust, objects to the compromise proposed by the debtor.

The relevant facts are stated briefly as follows: Wesley and Mary Mann are general and limited partners of Old Town. In December, 1983, Old Town leased to the Manns the second floor of debtor's two-story office-commercial building located at 39–43 East Union Street, Pasadena, California. The lease, with a term of five years, commenced on September 1, 1984. Thereafter, with Old Town's approval, the Manns leased some of their space to various subtenants. In early 1986, a dispute arose between the parties and the Manns stopped making lease payments to Old Town, although the Manns continued to collect rent from their subtenants. Because Old Town depended on the Manns' lease payments as its only source of cash flow, Old Town fell behind in its mortgage payments to Tokai, which threatened foreclosure, and on July 17, 1986 Old Town was forced to file a Chapter 11 petition. Early on in the Chapter 11 case, Old Town, the debtor, commenced state court unlawful detainer proceedings against the Manns, to recover the rental arrearage, and also the full value of the unexpired term of the lease. The Manns counterclaimed for $243,000, and

* Of the District of Rhode Island, sitting by designation.

that litigation is pending in the state court. Debtor now seeks to settle its differences with the Manns, on the following terms: (1) the Manns will pay $35,000 to the debtor, and will turn over certain minimal personal property consisting of drapes and miniblinds; (2) the partnership interests of the Manns are acknowledged in the settlement, as is their right to manage the debtor as general partners; (3) leases between the Manns and their subtenants will be deemed leases with the debtor, and the subtenants will remain as tenants of the debtor; (4) item (3) will allow the debtor to use funds which the subtenants have been paying into a trust account[1] since August, 1986; (5) mutual releases of all claims between and among the debtor, the Manns and the subtenants will be executed.

■ At this time, on the evidence before us, we conclude that the proposed settlement is not in the best interest of the estate. To begin with, the Manns are insiders of the debtor/partnership, 11 U.S.C. § 101(30)(C)(i) ("general partner in the debtor"), and the debtor has a solid claim against the Manns, as of April 1, 1987, in the amount of $118,000, even after deducting offsets for services for the subtenants. In support of its motion, the debtor represents, without specificity, that the Manns "may" have valid defenses to debtor's claims, but has offered no support of the alleged risk of pursuing its claims, vis-a-vis the meager benefits of this settlement for the estate. Moreover, $143,000[2] of the Mann counterclaim consists of tenant improvements. While the addendum to the December 1983 lease obligates the debtor for approximately $61,000 of these improvements, this still leaves $82,000 of the Mann's counterclaim totally unexplained and unsupported. The debtor's claim against the Manns for back rent, even without valuing the unexpired term of the lease, is three times the cash portion of the

proposed settlement, and we have been given no reason to infer that the Manns could not respond to a judgment, or that the proposed settlement takes into consideration collection problems. In the bankruptcy context, there is a troublesome inconsistency between the allegation that the Manns caused the cash flow crisis which forced the debtor into bankruptcy, and the assertion that such an insignificant cash settlement with these same insiders, in exchange for a release of all the debtor's claims against them, is now in the best interest of the estate. In the circumstances, and recognizing that we are dealing here (as we must) largely with allegations and representations, as opposed to the merits of the controversy, the present proposal is grossly inadequate. In support of the settlement it has also been represented that the cash it would generate is necessary to make mortgage payments to Tokai. We are not inclined to allow the debtor to bestow such a gift upon the Manns in order to allow it to make a few mortgage payments, but would rather see a Chapter 7 trustee recover the full amount due from the Manns for the benefit of general creditors, if that is the way this case has to go. If the debtor's position is so desperate that its only hope depends on letting the Manns off as proposed, then the case does not deserve to be in Chapter 11. For the foregoing reasons, the motion to approve the proposed settlement is denied.

■ Regarding an issue more critical to the reorganization than the Mann settlement, Tokai Bank has moved for relief from stay or, in the alternative, for adequate protection. The motion was partially heard by Judge Barr on April 27, 1987, and was continued until May 20, before us. Although, when Judge Barr continued the matter for further hearing, he stated that the parties should plan to present appraisal testimony on May 20, neither side was pre-

---

1. The evidence is not clear as to the amount of subtenant rent in the trust account. Because of the insider status of the Manns, and to fill the present void in the record, the Manns are ordered to file a detailed accounting of the names of their subtenants, the dates of said tenancy, the rents contracted for and the actual rents

received, and the dates said rents were collected. Said information should be furnished by the Manns in affidavit form within fifteen days of the date of this order.

2. Of the $243,000 counterclaim, $100,000 is in the form of a general damage claim.

pared, with witnesses, to go forward, so we will do the best we can with what we have. After reviewing the declarations and appraisals submitted by each party, and only for the purpose of valuation on this motion for relief from stay, we find that the market value of the property is approximately one million dollars. Although Tokai presently has a slim equity cushion, the property alone may not be enough to adequately protect its claim indefinitely.[3] Whether the property appreciates or decreases in value, over time, we will only know with hindsight. In the circumstances, therefore, and in order to continue to enjoy the benefits of the stay, the debtor is ordered to resume making regular monthly payments to Tokai Bank, until further order.

■ Tokai also argues that the debtor has no prospect for reorganization, that as a result, the "property is not necessary to an effective reorganization" and, therefore, apart from the adequate protection issue, the bank is entitled to relief from stay under 11 U.S.C. § 362(d)(2)(B). The debtor presented testimony of two of its general partners, Ronald and Patricia Howard, on this issue. Ronald Howard stated that as of the hearing date the debtor had agreements in principle to rent the entire first floor. From the inception of this project, the first level has been unoccupied, mainly because of restrictions to the availability of sufficient parking spaces. The zoning (parking) problem has recently been solved. On August 17, debtor's attorney conceded that one of the debtor's prospective tenants Mr. Howard testified about on May 20 had decided not to move into the premises. However, he also represented that the debtor has agreements to lease two-thirds of the first floor, that discussions are ongoing regarding the remaining space, and expects that if these negotiations are successful, the first floor will be entirely occupied. Based on the representations of counsel, and relying on the likelihood that the first floor will be completely leased and income producing within a short time, we find that the debtor's ability to reorganize is not as remote as Tokai contends. We also find that the property is necessary for an effective reorganization. *See In re W.S. Sheppley & Company*, 45 B.R. 473 (Bankr.N.D. Iowa 1984).

■ Ronald Howard also testified, over Tokai's objection, concerning interest rates for major commercial loans in the Pasadena area, and based upon all the evidence, we find that interest on the debtor's adequate protection payments to Tokai should be at the rate of 10%, and that said payments shall commence thirty days from the date of this order. *See In re Landsea Marketing, Inc.*, 53 B.R. 436 (Bankr.C.D. Cal.1985).

Therefore, the motion for relief from stay is denied, without prejudice, but the debtor is reminded that it does not have unlimited time to complete its arrangements for fully leasing the building and submitting a plan of reorganization. The debtor is also directed, as a condition of the relief it is receiving herein, to press its litigation with the Manns, and to obtain a judicial resolution of that dispute as soon as possible.

---

**3.** There is evidence that property values in the area of the subject property are increasing steadily. Whether the rise in value is keeping pace with Tokai's increasing debt, is unclear.