**In re Edward J. RASSIER and Muriel D. Rassier, d/b/a Rassier Enterprises, Debtors.**

**Bankruptcy No. 4–88–261 (M–1).**

United States Bankruptcy Court, D. Minnesota.

April 4, 1988.

Raymond C. Lallier, Mackall, Crounse & Moore, Minneapolis, Minn., for movant.

Joseph G. Beaton, Jr., Minneapolis, Minn., for debtors.

ROBERT J. KRESSEL, Chief Judge.

This case came on for hearing on Norwest Bank Grand Rapids' motion for relief from stay under 11 U.S.C. § 362(d). Raymond C. Lallier appeared for the bank and Joseph G. Beaton, Jr. appeared for the debtors. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Based on the evidence, memoranda of counsel, and the file of this case, I make the following:

## MEMORANDUM ORDER

The debtors filed this chapter 13 case[1] on January 25, 1988. Norwest Bank Grand Rapids, a creditor in the case, filed a motion for relief from the automatic stay on February 8, 1988. A preliminary hearing was held on February 11, 1988. A final hearing was held on March 4, 1988.

### I.

Edward and Muriel Rassier own and operate three related businesses: Rassier School Bus Service, Inc. (RSBS), Rassier Enterprises, Inc. (REI), and Rassier Enterprises. The two corporations, RSBS and REI, were formed in the summer of 1987 to insulate the debtors from personal liability. RSBS operates a school bus service in Hill City, Minnesota. Its only business is with the Hill City School District. They have had a continuing contractual relationship for 19 years. The current year's contract will generate $120,000.00 in revenue. REI operates a construction business in and around Hill City. Due to wet weather and a few unprofitable jobs, the business has been struggling in the last year or two. However, REI currently has over $200,-000.00 in contracts for the summer of 1988.

---

1. Because their debt exceeded the statutory limits for chapter 13, the case was converted to chapter 11 on March 18, 1988.

In addition to the two corporations, the debtors do business as Rassier Enterprises. The main function of Rassier Enterprises is to lease bus equipment to RSBS and construction equipment to REI, although it also has some construction contracts of its own. The income derived from these leases is only enough to pay the debt service on the equipment. There is little or no profit. The debtors earn their income as employees of RSBS and REI.

Most, if not all, of the equipment leased by the debtors is subject to a security agreement with Norwest Bank Grand Rapids. The equipment was pledged to secure three promissory notes to the bank totalling $101,365.10:

| Origination Date | Maturity Date | Original Principal Amount | Outstanding Balance as of January 25, 1988 |
|---|---|---|---|
| 06/26/85 | 06/30/89 | $102,000.00 | $61,706.04 |
| 04/02/87 | 10/02/87 | 25,000.00 | 26,632.98 |
| 08/14/87 | 05/14/91 | 14,000.00 | 13,026.08 |
| | | $101,365.10 | $141,000.00 |

The April 2, 1987, promissory note came due on October 2, 1987. The debtors were unable to pay the principal and accrued interest. As a result, the bank accelerated the other two notes and demanded payment.[2]

On December 17, 1987, the bank brought an action in state court to recover the collateral subject to its security interest. A hearing was scheduled for January 11, 1988. At the request of the debtors, the bank agreed to continue the hearing for two weeks to give the debtors an opportunity to find new financing. On January 25, 1988, the debtors filed this case. On February 8, 1988, the bank moved for relief from the automatic stay imposed by 11 U.S.C. § 362(a), or in the alternative, adequate protection of its security interest.

There is no dispute that the bank is presently oversecured. However, the parties do not agree on the amount of the bank's equity cushion. The bank appraised the equipment at $166,775.00[3] and the inventory at $60,000.00. The debtors appraised all but 19 items of the equipment on the bank's appraisal at $234,250.00, and the inventory at $60,000.00 for a total of $294,250.00. The 19 items of collateral missing from the debtor's appraisal total $34,375.00 at the bank estimates. If that amount is added to the debtors' appraisal, the total value would increase to $328,625.00. Thus, the value of the bank's security interest is between $226,775.00 and $328,625.00.[4]

II.

The bank moves for relief from the stay under 11 U.S.C. § 362(d). That section provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and

---

**2.** Interest accrues on the outstanding notes at a rate of $34.08 a day.

**3.** The bank's appraisal contains an "in use" value and a "controlled liquidation" value. I find that the "in use" estimate more accurately reflects the value of the collateral for purposes of this motion.

**4.** Much of the difference in value can be attributed to seven items of equipment:

| Item | Debtors' Appraisal | Bank's Appraisal |
|---|---|---|
| John Deere Crawler | $13,400.00 | $4,000.00 |
| John Deere Loader | 15,500.00 | 10,000.00 |
| '80 Int'l F2500 (12 yd. box) | 17,000.00 | 6,000.00 |
| '80 Int'l F1900 (12 yd. box) | 18,000.00 | 6,000.00 |
| '83 Int'l F1900 (14 yd. box) | 29,000.00 | 6,500.00 |
| '85 Int'l 53 Pass. School Bus | 21,000.00 | 15,000.00 |
| Case 125 Excavator | 65,000.00 | 21,000.00 |
| | $179,700.00 | $68,500.00 |

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). The bank argues that it is entitled to relief from stay under both § 362(d)(1) and (d)(2). I will address each ground separately, beginning with § 362(d)(2).

### (A) *Relief Under § 362(d)(2)*

■ The bank first argues that relief from stay should be granted under § 362(d)(2). To prevail, the debtors must have no equity in the property and the property must not be necessary to an effective reorganization. There is no dispute that the debtors have no equity[5] in the property, therefore, the only issue is whether it is necessary to an effective reorganization.

The precise meaning of "necessary to an effective reorganization" has been the topic of much discussion over the years. Courts have struggled with what type of showing is required to defend against a motion for relief from stay under § 362(d)(2)(B). Two different tests have evolved: a feasibility test and a necessity test.

A majority of courts advocate a feasibility test. *In re Planned Systems, Inc.*, 78 B.R. 852, 865 (Bktcy.S.D.Ohio 1987) as cases cited therein. *E.g., Tokai Bank v. Old Town Historic Building Limited Partnership*, 79 B.R. 8 (Bktcy.C.D.Cal. 1987); *In re Anderson Oaks (Phase I) Limited Partnership*, 77 B.R. 108 (Bktcy. W.D.Tex.1987); *Mitchell v. Frankford Trust Co.*, 75 B.R. 593, 598–99 (Bktcy.E.D. Pa.1987); *Unifirst Bank for Savings, F.A. v. Park Timbers, Inc.*, 58 B.R. 647 (Bktcy. D.Del.1985); *In re Bellina's Restaurants II, Inc.*, 52 B.R. 509 (Bktcy.S.D.Fla.1985); *Grundy Nat'l Bank v. Stiltner*, 58 B.R. 593 (D.W.D.Vir.1986); *In re Discount Wallpaper Center, Inc.*, 19 B.R. 221 (Bktcy.M.D.Fla.1982). The first court to apply a feasibility test in the context of § 362(d)(2)(B) was *Terra Mar Dev. Corp. v. Terra Mar Associates*, 3 B.R. 462 (Bktcy.D. Conn.1980). Relying on prior case law in

that district, the court reasoned that "necessary to an effective reorganization" required the debtor to show that the property is necessary to reorganization, and that a reorganization is reasonably likely. *Id.* at 465–66.

In a decision rendered by this Court under the Bankruptcy Act, involving a complaint for relief from stay in a Chapter XII case, it was held that the significant factors to be considered in such a proceeding are whether: (1) the secured credit will suffer imminent and irreparable injury from the continuation of the stay, (2) the property sought to be foreclosed upon is necessary to effect a reorganization, and (3) there is a reasonable probability of a successful rehabilitation within a reasonable time. *In re Fortin*, 5 BCD 90 (B.C.Conn. 2/6/79).

It appears that § 362(d)(2) includes essentially the same key elements mentioned in *Fortin*. I conclude that the requirement in § 362(d)(2)(B) that the property "be necessary to an effective reorganization" depends upon a finding by the court that there is a reasonable possibility of a successful reorganization within a reasonable time. *Id.* (footnote omitted). The development of the feasibility test, therefore, was a product of case law interpretation, not the legislative history of § 362(d)(2)(B).

Most cases since *Terra Mar Dev. Corp.* have concluded that the feasibility test is consistent with Congress' intent in enacting § 362(d)(2)(B). Focusing on the word "effective" in § 362(d)(2)(B), these courts reason that the debtor must not only show that the property is necessary to reorganization, but also that a reorganization is reasonably likely to occur. This view has been adopted, by way of dictum, in several circuit courts. *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 370 (5th Cir.1987), *aff'd*, —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *Norwest Bank Worthington, N.A. v. Ahlers*, 794 F.2d 388, 397–98 (8th Cir. 1986), *rev'd on other grounds*, —— U.S.

---

**5.** Although the bank has an equity cushion, subsequent liens when combined with the bank's liens exceed the value of the collateral.

——, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Grundy Nat'l Bank v. Tandem Mining Corp.,* 754 F.2d 1436, 1440 (4th Cir.1985); *Albany Partners, Ltd. v. Westbrook,* 749 F.2d 670, 673 n. 7 (11th Cir.1984).

A growing number of courts, however, advocate a necessity test. *Hunter Savings Ass'n v. Padgett,* 74 B.R. 65 (Bktcy.S.D. Ohio 1987); *In re Deeter,* 53 B.R. 623 (Bktcy.N.D.Ind.1985); *In re Sunstone Ridge Associates,* 51 B.R. 560 (D.Utah 1985); *In re Lilyerd,* 49 B.R. 109 (Bktcy.D. Minn.1985); *In re W.S. Sheppley Co.,* 45 B.R. 473 (Bktcy.N.D.Iowa 1984); *Walter E. Heller Western, Inc. v. Faires,* 34 B.R. 549 (Bktcy.W.D.Wash.1983); *Empire Enterprises, Inc. v. Koopmans,* 22 B.R. 395 (Bktcy.D.Utah 1982). Under this approach, property is necessary to an effective reorganization "whenever it is necessary, either in the operation of the business or in a plan, to further the interests of the estate through rehabilitation or liquidation." *Koopmans,* 22 B.R. at 407. There is no requirement that the debtor show a reasonable likelihood of a successful reorganization to defeat a creditor's motion under § 362(d)(2)(B).

In light of the plain language of the statute and the legislative history discussing the term "necessary to an effective reorganization," I find that the necessity test more accurately reflects Congress' intent in enacting § 362(d)(2)(B). An earlier version of § 362(d) evidences Congress' focus on the nature of the property as opposed to the rehabilitative aspects of the debtor.

> (d) On request of a party in interest, after notice and a hearing, and for cause, including the lack of adequate protection of an interest in property of such party in interest, the court shall within thirty days after such hearing grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay. The court shall grant relief from the stay if the court finds that the debtor has no equity in the property subject to the stay and such property is not necessary to an effective reorganization of the

debtor. For the purpose of this subsection (d), property is not necessary to an effective reorganization of the debtor if it is real property on which no business is being conducted by the debtor other than the business of operating the real property and activities incidental thereto. Where the debtor owns two or more properties for which an established business enterprise has been created for the purpose of managing and leasing such properties, however, the court may find that one or more of such properties are essential to the effective reorganization of such real estate management enterprise. Where a request is made to grant relief from the stay with respect to property not necessary to an effective reorganization of the debtor, and the court determines that the debtor has equity in the property, the court shall authorize or order the sale of the property pursuant to section 363. The hearing of such motion shall take precedence over all matters except older matters of the same character.

S. 2266, 95th Cong., 2d Sess., *reprinted in,* Appendix 3 Collier on Bankruptcy (15th ed. 1979). The clear focus of the inquiry is on the nature of the property. Congress did not contemplate an evidentiary hearing on the likelihood of the debtor successfully reorganizing.

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

> The action commenced by the party seeking relief from the stay is referred to as a motion to make it clear that at the expedited hearing under subsection (e), and at hearings on relief from the stay, the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of

the debtor, or the existence of other cause for relief from the stay.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 54–55, *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5787, 5841. Nowhere in the legislative history is there reference to any inquiry into the reasonable likelihood of reorganization.

Not only is the necessity test supported by the legislative history, it also is more consistent with the fundamental purpose of § 362. Congress promulgated § 362 to give the debtor time to determine its options and formulate a plan of reorganization. S.Rep. No. 95–989, 95th Cong., 2d Sess. 54–55, *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5787, 5841. During that time, the creditor is entitled to adequate protection of its interest in the property. 11 U.S.C. § 362(d)(1). Forcing the debtor to prove the probability of a successful reorganization, especially in the early stages of a case, defeats the purpose of imposing the stay in the first place.

The concerns raised by the courts advocating a feasibility test are valid, but misplaced. Although lack of an ability to effectuate a plan of reorganization is not grounds for relief from stay under § 362(d)(2), it may be grounds for terminating the stay under § 362(d)(1).[6] If the case is stagnant and there is no demonstrable chance of a successful reorganization or beneficial liquidation, then relief from stay should be granted for "cause." Such relief rarely will be granted at the outset of the case, but as time passes there is increased "cause" for terminating the stay. The amount of time, of course, will depend on the particular facts in each case.

In holding that the debtor need not show a reasonable likelihood of reorganization under § 362(d)(2)(B), I am mindful of the United States Supreme Court's decision in *United Savings Ass'n v. Timbers of In-*

*wood Forest Associates, Ltd.,* —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Expounding on the meaning of "necessary to an effective reorganization," the Court stated:

What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." [*In re Timbers of Inwood Forest Assocs.*] 808 F.2d, [363] at 370–371, and nn. 12–13, and cases cited therein. The cases are numerous in which § 362(d)(2) relief has been provided within less than a year from the filing of the bankruptcy petition. And while the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan, see 11 U.S.C. §§ 1121(b), (c)(2), even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief.

108 S.Ct. at 632–33 (footnotes omitted). The language in *Timbers,* however, is not controlling in this case. The issue before the Court was "whether undersecured creditors are entitled to compensation under 11 U.S.C. § 362(d)(1) for the delay caused by the automatic stay in foreclosing on their collateral." *Id.* at 629. Any discussion of § 362(d)(2) is dictum.

The Eighth Circuit's decision in *Norwest Bank Worthington, N.A. v. Ahlers,* 794 F.2d 388 (8th Cir.1986), *rev'd on other grounds,* —— U.S. ——, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), also is dictum and not

---

6. Interpreting § 362(d) in this manner avoids the problems that some courts using a feasibility test have encountered. At the outset of a case, there is little or no evidence to determine the likelihood of a successful reorganization. To account for the lack of evidence, courts generally require a lesser showing by the debtor. *E.g., In re Planned Systems, Inc.,* 78 B.R. 852, 866 (Bktcy.S.D.Ohio 1987) (Where reorganiza-

tion is in its infancy, a somewhat relaxed standard will be imposed); *In re 6200 Ridge, Inc.,* 69 B.R. 837, 843 (Bktcy.E.D.Pa.1987). *See also United Savings Ass'n v. Timbers of Inwood Forest Associates, Inc.,* —— U.S. ——, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988). Application of the necessity test avoids this sliding standard of proof.

controlling. The issues before the court in that case dealt with the absolute priority rule in the confirmation of a plan under 11 U.S.C. § 1129 and the requirement of adequate protection in denying relief from stay under 11 U.S.C. § 362(d)(1). The court merely mentioned that it had "no quarrel" with the cases requiring a reasonable likelihood of reorganization to defeat a motion for relief from stay under § 362(d)(2)(B). 794 F.2d at 397–98.

The decisions in *Timbers* and *Ahlers* are excellent examples of why dictum is not controlling case law. Both courts accepted the majority position without critically analyzing the issue and without the benefit of the critical argument by the parties that brought to bear on the actual issues to be decided. It seems clear to me that the necessity test is amply supported by the legislative history and more consistent with the underlying purpose of § 362(d).

■ Applying the necessity test to the facts of this case, there is no doubt that the bank's motion must be denied. The property subject to their security interest is necessary to the debtors' reorganization. The equipment and inventory are used on a daily basis in their business. Without it, there would be no chance to reorganize. Therefore, relief from stay must be denied under 11 U.S.C. § 362(d)(2).

### (B) *Relief Under § 362(d)(1)*

■ The second ground asserted by the bank for relief from stay is lack of adequate protection under § 362(d)(1).[7] That section provides that relief from stay may be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest...." 11

U.S.C. § 362(d)(1). The debtors have the burden of proving that the bank's interest is adequately protected. 11 U.S.C. § 362(g).

The evidence in this case shows that the debtor's obligation to the bank is $101,365.10, and the value of the collateral is between $226,775.00 and $328,625.00.[8] Interest continues to accrue on the debt at a rate of $34.08 a day (approximately $1,022.40 a month). The debtors have offered to pay $2,100.00 per month as adequate protection.

Under the circumstances, I find that the bank's interest is adequately protected. The bank has a substantial equity cushion in the property,[9] and although the property is depreciating, the debtors' payment of $2,100.00 per month more than covers any decrease in value. Consequently, the bank's motion for relief from stay under § 362(d)(1) will be denied on the condition that the debtors make adequate protection payments of $2,100.00 each month commencing one month after the bank filed its motion. The March 8, 1988, payment is due immediately.

### III.

To summarize, the bank asserts two grounds for relief from stay, §§ 362(d)(2) and 362(d)(1). Its claim under § 362(d)(2) must be denied because the property is undoubtedly necessary to an effective reorganization. Likewise, the bank's claim under § 362(d)(1) must be denied because the bank has a substantial equity cushion in the property and the debtors' payment of $2,100.00 a month more than covers interest and depreciation. The adequate protection payments are effective one month af-

---

**7.** The bank also argues that the debtors' failure to obtain an order for use of cash collateral constitutes "cause" for relief from stay. However, the evidence is insufficient to support the bank's claim.

**8.** There is much talk about purchase-money security interests in the collateral that have priority over the bank's interest. However, there is no evidence to determine the extent of those interests. The documents and pleadings admitted into evidence refer only to the existence of the purchase-money security interests. There is

a summary of the collateral's value that lists some amounts for the interests, but it was admitted for illustrative purposes only. Moreover, even if it was considered, it would not be of much use because there is a significant discrepancy between the bank's calculation of the interests and the debtors' calculation of the interests.

**9.** Even assuming the existence of purchase-money security interests in the collateral, the bank admittedly has an equity cushion of at least $25,000.00.

ter the date the bank filed its motion, February 8, 1988.

THEREFORE, IT IS ORDERED: Norwest Bank Grand Rapid's motion for relief from stay is denied on the condition that the debtors make adequate protection payments of $2,100.00 per month. The March 8, 1988, payment is due immediately and like payments are due on April 8, 1988, and the eighth day each month thereafter.