**In re BLOOMINGTON HH INVESTORS, LIMITED PARTNERSHIP, d/b/a Minneapolis/St. Paul Airport Hilton Hotel, Debtor.**

**BLOOMINGTON HH INVESTORS, LIMITED PARTNERSHIP, d/b/a Minneapolis/St. Paul Airport Hilton Hotel, Appellant,**

v.

**GIBRALTAR SAVINGS ASSOCIATION, a Texas savings and loan association, Appellee.**

Bankruptcy No. 3–88–704.
Civ. No. 4–88–863.

United States District Court,
D. Minnesota,
Fourth Division.

April 26, 1990.

Donald R. Johnston, Larry B. Ricke, and Wagner, Johnston & Falconer, Ltd., Minneapolis, Minn., for appellant.

Allen I. Saeks, Douglas Greenswag, and Leonard, Street & Deinard, Minneapolis, Minn., for appellee.

Michael McGrath, and Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for Unsecured Creditors Committee.

### ORDER

DOTY, District Judge.

This matter is before the court on appeal from Bankruptcy Court Judge Gregory F.

gous to paid-in capital than it is to earmarked funds.

Kishel's order granting relief from an automatic stay dated July 22, 1988. Based on the briefs and arguments of counsel, and the record, file and proceedings herein, the bankruptcy court's order will be affirmed.

## BACKGROUND

On November 21, 1985, Gibraltar Savings Association ("Gibraltar") loaned appellant Bloomington HH Investors, Limited Partnership, d/b/a Minneapolis/St. Paul Airport Hilton Hotel ("debtor") $27,000,000. Gibraltar secured the loan with a mortgage on the hotel and a security agreement covering debtor's personalty. On November 1, 1987, debtor defaulted on its payments under the loan. Record Ex. 13. After a number of unsuccessful attempts to restructure the loan, debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code, on March 3, 1988, and thereby obtained an automatic stay of Gibraltar's attempts to enforce its liens. *See* 11 U.S.C. § 362(a) (1988).

On April 15, 1988, Gibraltar filed a motion for relief from the automatic stay. The bankruptcy court conducted hearings on June 14, 15 and 29, 1988. The amount owed to Gibraltar on the loan at that time was $25,935,714.97. Both parties presented experts who, after appraisal, rendered opinions on the value of the hotel. Debtor's expert estimated the value at $26,500,-000; Gibraltar's expert estimated the value at $19,000,000. The bankruptcy court issued its findings of fact on the record on July 22, 1988, and concluded that the hotel was worth $19,000,000. The bankruptcy court further found that debtor had no reasonable possibility of successfully reorganizing its hotel operations within a reasonable time.

On this appeal, debtor challenges the bankruptcy court's findings of fact as being clearly erroneous. Debtor further contends that the bankruptcy court applied an incorrect legal standard in making its determination to grant Gibraltar's motion for relief from stay under 11 U.S.C. § 362(d)(2)(B) (1988).

## DISCUSSION

The factual findings of the bankruptcy court are subject to the clearly erroneous standard of review. *In Re Ahlers*, 794 F.2d 388, 394 (8th Cir.1986), *rev'd on other grounds*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Under this standard, the court must give due consideration to the bankruptcy court's ability to judge the credibility of witnesses. Bankruptcy Rule 8013.

> Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous ... even when the ... court's findings do not rest on credibility determinations, but are based instead on ... documentary evidence or inferences from other facts.

*Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (interpreting clearly erroneous standard under Rule 52 of the Federal Rules of Civil Procedure, upon which Bankruptcy Rule 8013 is patterned—*see* Advisory Committee Note 2, Bankruptcy Rule 8013).

The bankruptcy court's legal conclusions are subject to *de novo* review. *In Re Emmer Bros. Co.*, 52 B.R. 385, 390 (D.Minn. 1985).

Debtor appeals from the bankruptcy court's granting of Gibraltar's motion for relief from the stay under 11 U.S.C. § 362(d)(2) (1988), which provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
>
> *    *    *    *    *    *
>
> (2) with respect to a stay of an act against property under subsection (a) of this section if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization.

A. *Section 362(d)(2)(A)*

Debtor contends that the bankruptcy court's finding that the hotel's estimated

value was $19,000,000 as of June 1988 was clearly erroneous. Based on its review of the record herein, the court disagrees. Gibraltar proferred testimony from an expert that in his opinion the hotel's estimated value was $19,000,000. The bankruptcy court found Gibraltar's expert more credible than debtor's. This court has reviewed the testimony of Gibraltar's expert and his detailed appraisal exhibit which was admitted into evidence without objection. The court concludes that the testimony and appraisal could reasonably be relied on to support the bankruptcy court's finding.

Debtor focuses on four problems which in its view establish that the bankruptcy court's $19,000,000 determination was clearly erroneous. First, debtor attacks the court's reliance on Gibraltar's expert's conclusion that the closing of the Minneapolis Convention Center would increase competition from downtown Minneapolis hotels with Bloomington hotels. Debtor's own expert testified that the closing of the Minneapolis Convention Center adversely affected the downtown Minneapolis hotel market. Tr. at 305-307. The fact that debtor's expert differed with Gibraltar's expert's opinion that this adverse affect on the downtown Minneapolis market would also cause increased competition in Bloomington does not cause the bankruptcy court's reliance on Gibraltar's expert to be clearly erroneous. Such credibility determinations are clearly of the sort to be left to the bankruptcy judge. *See* Bankruptcy Rule 8013; *Anderson v. Bessemer City,* 470 U.S. at 574, 105 S.Ct. at 1511. This conclusion also applies to debtor's objection regarding the difference in each expert's opinion as to the effect of possible developments in the Bloomington Mega–Mall on the value of the hotel.

Debtor's objection concerning the bankruptcy court's asserted misunderstanding of the construction cost of the hotel is also without merit. The bankruptcy court expressly stated that its reference to the construction cost of $30,000,000 was not an essential finding and struck it. Tr. at 24.

Finally, debtor contends that the bankruptcy court's $19,000,000 determination

must be clearly erroneous because Gibraltar loaned the debtor $27,000,000 one year prior to the bankruptcy court's valuation, and that loan was based on its valuation of the property at that time. Debtor contends that logic dictates that absent some catastrophe in the market, the property could not decline so dramatically. While the court finds this to be the most persuasive of defendant's objections, based on its review of the record herein, the court cannot say that the bankruptcy judge's reliance on Gibraltar's expert was unreasonable, and accordingly affirms its factual determinations.

### B. *Section 362(d)(2)(B)*

■ The bankruptcy judges in this district are split on their interpretation of the appropriate standard to apply under § 362(d)(2)(B). *Compare In Re Rassier,* 85 B.R. 524 (Bankr.D.Minn.1988) (Kressel, C.J.) *and In Re Metro Square,* Bktcy. 4–88–2117, 1988 WL 86678 (Bktcy.D.Minn. Aug. 12, 1988) (Dreher, J.) *with In Re Bloomington HH Investors,* Bktcy. 3–88–704 (Bktcy.D.Minn. July 22, 1988) (Kishel, J.) (order on review). Chief Judge Kressel and Judge Dreher apply the so-called "necessity test." Under that test, debtor need only show that the subject property was necessary to its reorganization plan in order to satisfy its burden under § 362(d)(2)(B). *See Rassier,* 85 B.R. at 530. In his order being reviewed, Judge Kishel requires more than just a showing of necessity. Under his approach, debtor must also show that there is a reasonable possibility of a successful reorganization within a reasonable time. This approach has been identified as the "feasibility test."

■ A decided majority of courts have accepted or adopted the feasibility test. *See United States Savings Ass'n v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 375–76, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988), *aff'g,* 808 F.2d 363, 370 (5th Cir.1987); *Norwest Bank Worthington, N.A. v. Ahlers,* 794 F.2d 388, 397–98 (8th Cir.1986), *rev'd on other grounds,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Grundy Nat'l Bank v. Tandem*

*Mining Corp.,* 754 F.2d 1436, 1440 (4th Cir.1985); *Albany Partners, Ltd. v. Westbrook,* 749 F.2d 670, 673 n. 7 (11th Cir. 1984); *In Re Ritz–Carleton of D.C., Inc.,* 98 B.R. 170, 172 (S.D.N.Y.1989) (criticizing *Rassier*); *In Re National Real Estate Limited Partnership II,* 87 B.R. 986, 990–91 (Bankr.E.D.Wis.1988) (same); *In Re Diplomat Electronics Corp.,* 82 B.R. 688, 692–93 (Bankr.S.D.N.Y.1988); *In Re Gulph Woods Corp.,* 84 B.R. 961, 972 (Bankr.E.D. Penn.1988); *Matter of King,* 83 B.R. 843, 847 (Bankr.M.D.Ga.1988); *In Re Kanawha Trace Development Partners,* 87 B.R. 892, 894 (Bankr.E.D.Va.1988); *In Re Bell Tower Associates, Ltd.,* 86 B.R. 795, 802 (Bankr.S.D.N.Y.1988). In *Timbers,* the Supreme Court stated in a unanimous opinion written by Justice Scalia:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." What this requires is not merely showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*Timbers,* 484 U.S. at 375–76, 108 S.Ct. at 632 (citations omitted and emphasis in the original). In *Ahlers,* the Eighth Circuit Court of Appeals in a panel decision by Judge Heaney declared:

> Several courts have interpreted the "necessary for an effective reorganization" language in § 362(d)(2)(B) to require a debtor not only to show that the property in question is essential to the reorganization plan, but also that an effective reorganization is realistically possible.... We have no quarrel with these decisions.

*Ahlers,* 794 F.2d at 398 (citations omitted).

Other than Judges Kressel and Dreher, only a handful of bankruptcy judges advo-cate a necessity test. *See In Re Rassier,* 85 B.R. at 528 (listing cases).

After studying these authorities, this court concludes that Judge Kishel properly interpreted § 362(d)(2)(B) in applying the feasibility test. The basis for Judge Kressel's rejection of the feasibility test is that the pronouncements in *Timbers* and *Ahlers* are only dicta, and in his view, neither § 362(d)(2)(B) nor its legislative history require more than a showing of necessity. *See In Re Rassier,* 85 B.R. at 528–30. While the language in *Timbers* and *Ahlers* is arguably dicta, Judge Kressel's interpretation of § 362(d)(2)(B) is nevertheless incorrect because it ignores the word "effective" contained in the language of the statute: "such property is not necessary to an effective reorganization." In order for a reorganization to be effective, it must be feasible. *See In Re National Real Estate Ltd. Partnership II,* 87 B.R. 986, 991 (Bankr.E.D.Wis.1988). Also, "if no reorganization of the debtor is feasible, then no property of that debtor can be necessary for that end." *In Re Dublin Properties,* 12 B.R. 77, 80 (Bankr.E.D.Pa.1981), *quoted with approval in, In Re Ahlers,* 794 F.2d 388, 398 (8th Cir.1986).

Based on the foregoing, IT IS HEREBY ORDERED that the bankruptcy court's decision in this case is affirmed.